IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | _____ |
| EMPLOYERS REASSURANCE CORPORATION, | ) ) ) ) | |
| Defendant. | ) ) | |

## JOHN HANCOCK'S MEMORANDUM IN SUPPORT OF ITS PETITION AND MOTION FOR ENFORCEMENT OF THE ARBITRATION AGREEMENT

John Hancock Life Insurance Company (U.S.A.) ("John Hancock" or the "Company")

respectfully submits this Memorandum in further support of its Petition and Motion for

Enforcement of the Arbitration Agreement (the "Petition"). As demonstrated below, the

arbitrator Employers Reassurance Corporation ("ERAC") has selected is not qualified to serve

under the terms of the arbitration agreement. Accordingly, ERAC's party arbitrator should be

removed and ERAC ordered to appoint a qualified replacement arbitrator within fourteen days of

the Court's order.

## I.  Factual Background

### A.  The Agreement

Petitioner John Hancock[1] and Respondent ERAC (the "Parties") are parties to a certain

Automatic, in Force Reinsurance Agreement effective July 1, 1999 and numbered EP19A01 (the

---

[1]  At the time the Agreement was executed, John Hancock was known as "The Manufacturers Life Insurance Company (U.S.A.)".  (Affidavit of Shaun Downey ("Downey Aff."), ¶ 1, Ex. 1 at 1.)  Following Manulife Financial

"Agreement"). (Downey Aff., ¶ 1, Ex. 1.) The Agreement is perpetual and remains in force today. (*Id.*, ¶ 1, Ex. 1, Art. XIV.) It may be terminated as to policies in force as of the Agreement's effective date only with the mutual consent of the Parties. (*Id.*) Pursuant to the terms of the Agreement, John Hancock agreed to cede and ERAC to accept a percentage of John Hancock's retention of liability under specified insurance policies issued prior to the effective date of the Agreement. (*Id.*, Art. I.) The liabilities reinsured under the Agreement arise from life insurance policies issued by John Hancock, or such policies originally issued by John Hancock and later replaced by policies written by specified affiliates. (Downey Aff., ¶ 2; *see also* Ex. 1, Amendment dated effective as of April 28, 2004 ("Amendment").)

The Agreement contains a broad arbitration clause and contemplates speedy resolution of disputes between the Parties. In relevant part, the Agreement provides:

> Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration, and the arbitrators, who shall regard this Agreement from the standpoint of practical business as well as the law, are empowered to determine as to the interpretation of the treaty obligation.

(*Id.*, Ex. 1, Art. X.) The Agreement also details the method for selecting the arbitral panel, including the qualifications required of each arbitrator. Specifically, the Agreement provides:

> Each party shall appoint one arbitrator and these two arbitrators shall select a third arbitrator within two weeks of the appointment of the second. The second arbitrator is to be selected within two weeks after the notice is provided that the first arbitrator is selected.
>
> * * *
>
> All three arbitrators must be officers of Life Insurance Companies or Life Reinsurance Companies, excluding however, officers of the two parties to this Agreement, their affiliates or subsidiaries or past employees of any of these entities.

(*Id.*)

---

Corporation's acquisition of the John Hancock Financial Services, Inc. and its subsidiaries group, the Company changed its name to "John Hancock Life Insurance Company (U.S.A.)," and the Agreement was amended effective January 1, 2005 to reflect this change. (Affidavit of Emanuel Alves ("Alves Aff."), ¶¶ 2-3; Downey Aff., ¶ 1, Ex. 1.)

The Agreement also requires that the "arbitrators shall render a decision within two months of the appointment of the third arbitrator, unless both parties agree otherwise." (*Id.*) Therefore, the Agreement contemplates a swift resolution of disputes, with the entire process taking no more than three months – one month for panel selection and two additional months for each party to present its case and the arbitrators to render their decision.

B. <u>Arbitrator Selection</u>

John Hancock initiated arbitration on August 14, 2015 and provided notice that it had selected Mr. Thomas M. Zurek as its arbitrator in the demand. (Downey Aff., ¶¶ 3-4, Ex. 2.) Mr. Zurek serves as the General Counsel and Secretary of OneAmerica Financial Partners, Inc., which among other investment and retirement options sells life insurance. (*Id.*, ¶ 5.) As an officer of a life reinsurance company who has never worked for either ERAC or John Hancock, or any of their affiliates or subsidiaries, Mr. Zurek is qualified to serve as an arbitrator under the terms of the Agreement. (*Id.*, ¶ 5, Ex. 3; *see also Id.*, Ex. 1, Art. X.)

On August 28, 2015, the last date permitted by the Agreement, ERAC appointed Mr. Denis Loring as its arbitrator. (*Id.*, ¶ 6, Ex. 4.) ERAC represents that Mr. Loring is currently employed at RGA Worldwide Reinsurance Co., a life reinsurance company. (*Id.*; *Id.*, ¶ 5, Ex. 5.) He is not qualified to serve as an arbitrator in this dispute, however, because, as ERAC has acknowledged, he is a past employee of a John Hancock affiliate. (*See Id.*, ¶ 8.) For ten years, from 1971 to 1981, Mr. Loring worked for John Hancock Mutual Life Insurance Company ("JH Mutual"). (*Id.*)

John Hancock promptly advised ERAC of Mr. Loring's ineligibility to serve on the arbitral panel, and agreed to provide ERAC with another two weeks to name a new arbitrator. (*Id.*, ¶ 9, Ex. 6.) ERAC refused to withdraw Mr. Loring and, instead, concocted an argument that

3

Mr. Loring's prior employment with JH Mutual is irrelevant because that company does not exist today, and that Mr. Loring is not biased. (*See Id*., ¶ 10, Ex. 7.) ERAC's arguments ignore the Agreement's plain language. First, Article X does not limit its disqualification of former employees of the Parties, or their subsidiaries or affiliates at the time the dispute arises. (*See Id*., Ex. 1, Art. X.) ERAC's claim also ignores the fact that the reason JH Mutual does not exist today is because in 2009 it was merged with John Hancock – the party to the Agreement and Petitioner here. In fact, the business that JH Mutual conducted uninterrupted for over 100 years, is carried out today by John Hancock. (Alves Aff., ¶ 4.) Second, Mr. Loring's bias or lack thereof is beside the point. He is not qualified to serve as an arbitrator in this dispute under the clear and express terms of the Agreement. The Parties opted for a bright-line rule when they negotiated the Agreement, and chose to disqualify all former employees – period.

As a result of ERAC's appointment of an arbitrator who does not satisfy the Agreement's qualification standards, and refusal to withdraw him as contractually mandated, a dispute resolution process that is supposed to be swift is at a standstill. The arbitration, which is supposed to take three months, *total*, has already been delayed by more than one month, and additional delay is inevitable. John Hancock will be deprived of the right to a prompt resolution of the pending dispute it bargained for unless the Court acts quickly.

    C.  Corporate History of John Hancock and its Affiliates

JH Mutual, Mr. Loring's former employer, was chartered under Massachusetts law on April 21, 1862. (Alves Aff., ¶ 1, Ex. A.) As the Secretary of State of the Commonwealth of Massachusetts has certified, JH Mutual filed restated articles of organization on February 1, 2000, changing its name to John Hancock Life Insurance Company ("JH Life"). (*Id*.) In 2003,

Manulife Financial Corporation acquired JH Life as part of the broader acquisition of John Hancock Financial Services, Inc. and all its subsidiaries. (*Id.*, ¶ 3.)

The Petitioner and party to the Agreement, John Hancock, was formed in 1955 under the laws of Maine and redomesticated as a Michigan corporation in 1992. (*Id.*, ¶ 2.) It has been an indirect wholly-owned subsidiary of Manulife Financial Corporation, a Canadian company, for all times relevant to this petition. (*Id.*)

Mr. Loring's past employer, JH Life, and John Hancock became affiliates in 2004 through their common ownership by Manulife Financial Corporation, the ultimate parent company. (*Id.*, ¶ 4.) John Hancock and JH Life's affiliation cannot be legitimately challenged. In fact, the Agreement expressly recognizes the two companies were affiliates. In an amendment effective April 28, 2004, the Parties agreed to permit policies originally issued by John Hancock to be converted to policies issued by specified affiliates of the Company. (Downey Aff., Ex 1, Amendment, ¶1.) Schedule B to the Amendment is the "List of Affiliate Companies" and explicitly includes Mr. Loring's former employer, JH Life ("John Hancock Life Insurance Company"). (*Id.*, Sch. B.) Finally, in 2009 JH Life was merged into John Hancock and, therefore, Mr. Loring's former employer now is part of the Petitioner. (Alves Aff, ¶ 4.)

## II.  Argument

ERAC has designated Mr. Loring, a past JH Life employee, as its arbitrator in this dispute in contravention of the Agreement's plain language prohibiting past employees of Parties or their affiliates from serving as arbitrators. The Court is authorized to hear this Petition, as it seeks Mr. Loring's removal solely based on his failure to satisfy the qualification requirements spelled out in the Agreement. Mr. Loring is not qualified to serve as an arbitrator, and must be removed from the panel without further delay.

4816-2054-5321.7

A. <u>The Court has the Authority to Resolve this Dispute Now, Without Waiting for the Outcome of the Arbitration</u>.

John Hancock petitions the Court under the Federal Arbitration Act ("FAA"), which authorizes "[a] party aggrieved by the alleged failure, neglect, or refusal of another party to arbitrate under a written agreement for arbitration may petition any United States District Court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. More specifically, John Hancock asks this Court to exercise its power under Section 5 of the FAA, which mandates that if "in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed . . . " 9 U.S.C. § 5. The Agreement sets out the method the parties are to use to appoint arbitrators and John Hancock calls upon the power of this Court to enforce that agreement.

This Court may immediately remove Mr. Loring as unqualified under the Agreement, without waiting for the dispute to be arbitrated to a final award. As a general rule, courts will not decide a pre-award challenge to a designated arbitrator based on allegations that the arbitrator is biased or partial. *Allstate Ins. Co. v. OneBeacon American Ins. Co.*, 989 F.Supp.2d 143, 147 (D. Mass. 2013). It is well settled, however, that this rule does not apply to challenges based on an arbitrator's failure to meet the criteria specified in the arbitration agreement. *Id.* ("Courts have found several narrow exceptions to [the] general rule, allowing pre-award challenges concerning the contractually required qualifications of arbitrators.") (citing *Jefferson-Pilot Life Ins. Co. v. LeafRe Reinsurance Co.*, No. 00 C 5257, 2000 WL 1724661 (N.D. Ill. Nov. 20, 2000)); *National Cas. Co. v. OneBeacon American Ins. Co.*, No. 12-11874, 2013 WL 3335022, *12-13 (D. Mass. July 1, 2013) (distinguishing challenges to an arbitrator based on bias – which are premature in the pre-award stage – from the qualification-based challenges held not premature in *Jefferson-Pilot*, 2000 WL 1724661 and *B/E Aerospace, Inc. v. Jet Aviation St. Louis, Inc.*, No. 11 Civ.

4816-2054-5321.7

4032(SAS), 2011 WL 2852857 (S.D.N.Y. July 1, 2011)); *see also Farrell v. Subway Int'l, B.V.*,

No. 11 Civ. 08(JFK), 2011 WL 1085017 (S.D.N.Y. Mar. 23, 2011); *Oakland-Macomb*

*Interceptor Drain Drainage Dist. V. Ric-Man Construction, Inc.*, 850 N.W.2d 498, 507 (Mich.

Ct. App. 2014) (holding that Sections 4 and 5 of the FAA authorize pre-award resolution of

challenges based on an arbitrator's qualifications).

In *Jefferson-Pilot*, the court held that it could decide a pre-award challenge to the

qualifications under the contract of three arbitrators, pursuant to the clear mandate in Section 5 of

the FAA that "contractual provisions for the appointment of an arbitrator 'shall be followed.'"

*Jefferson-Pilot*, 2000 WL 2852857, *2 (quoting 9 U.S.C. §5). Plaintiff Jefferson-Pilot asked the

court to declare the arbitrators unqualified, as they were not "active or retired officer[s] of a life

or health insurance company familiar with the reinsurance business," as the contract required.

*Id.* at *1. The court held that the general rule precluding pre-award challenges to an arbitrator

did not apply to challenges based on the arbitrator's qualifications under the contract's clear

terms. *Id.*

> The question here is whether a party who challenges an arbitrator's
> qualifications – just like a party who challenges bias – must wait
> until the post-award stage to complain. I do not think this is
> necessary. Here, Jefferson-Pilot does not ask this court to
> undertake the difficult task of determining whether an arbitrator is
> impermissibly biased. Plaintiff merely asks that he be entitled to a
> benefit explicitly conferred by a provision of an agreement
> negotiated in an arm's length transaction between two
> sophisticated parties.

*Id.*

Under the rule articulated in *Jefferson-Pilot* – and adopted in this Court's recent decisions

– this Court has authority to decide now whether Mr. Loring qualifies to serve as an arbitrator

under the Agreement. *See Allstate*, 989 F.Supp.2d at 147; *National Cas.*, 2013 WL 3335022,

*12-13. John Hancock challenges Mr. Loring's appointment solely on the basis that he does not

qualify under the Agreement, which precludes past employees of the Parties or their affiliates from serving as arbitrators. (Downey Aff., Ex. 1, Art. X.) The Petition asks the Court simply to determine whether Mr. Loring meets the terms for which the Parties bargained at arm's length. As a former JH Life employee, Mr. Loring is excluded under the terms of the Agreement, and must therefore be removed from the panel.

B. Mr. Loring is not Qualified under the Terms of the Agreement and Should be Removed.

Mr. Loring cannot serve as an arbitrator in this dispute because he is a former employee of JH Life – a John Hancock affiliate. Under the plain letter of the Agreement, "officers of the two parties to this Agreement, their affiliates or subsidiaries *or past employees of any of these entities*" may not serve as panelists. (*Id.*) (emphasis added).

ERAC does not dispute that Mr. Loring is a former employee of JH Life, and cannot credibly challenge that JH Life and John Hancock were affiliates. In fact, ERAC has already explicitly agreed that JH Life and John Hancock were "affiliate companies" in the April 28, 2004 Amendment to the Agreement, and is estopped from taking any contrary position now. *See* 31 C.J.S. *Estoppel and Waiver* § 72 ("If, in making a contract, the parties agree on or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact as long as the contract stands."); *see also, e.g., Matter of Pubs, Inc. of Champaign*, 618 F.2d 432, 438 (7th Cir. 1980) ("Parties to an agreement are . . . estopped to deny the recitals contained in the agreement."); (Downey Aff., Ex. 1, Amendment, Sch. B.)

This should be the end of any inquiry into the relationship between the two companies, but even if the Court is inclined to look further, the companies' affiliation is also clear from their history. JH Life and John Hancock were owned by the same parent company, Manulife Financial Corporation, from 2004 to 2009. Companies owned by the same parent company are

affiliates. *Bacardi Intern. Ltd. v. V. Suarez & Co., Inc.*, 719 F.3d 1, 11 (1st Cir. 2013) ("[The parties] are wholly-owned subsidiaries of the same entity, and are affiliates."). Then, in 2009, JH Life and John Hancock merged into one another, becoming one and the same company. (*See* Alves Aff., ¶ 4.); *Braga v. Genlyte Group, Inc.*, 420 F.3d 35, 43 (1st Cir. 2005) ("The consolidation of two or more corporations is like the uniting of two or more rivers, neither stream is annihilated, but all continue in existence. A new river is formed, but it is a river composed of the old rivers, which still exist, though in a different form.") (citations omitted). Thus, Mr. Loring's former employer, JH Life, exists today as part of John Hancock.

ERAC incorrectly asserts that Mr. Loring is qualified to serve as an arbitrator, despite his past employment with JH Life, because, at the time this dispute arose, JH Life no longer existed as a separate company. (*See* Downey Aff., Ex. 1, Art. X.) However, Article X contains a blanket prohibition against appointment of any "past employees" of the Parties and any of their respective subsidiaries or affiliates. (*Id.*) The Agreement does not impose any temporal limits to this prohibition, and ERAC cannot impose one retroactively. Moreover, his past employer is now John Hancock, the Petitioner in the arbitration. (Alves Aff., ¶ 4.)

Equally meritless is ERAC's argument that Mr. Loring is permitted to serve as an arbitrator because of his claimed lack of bias. The Agreement sets an objective, bright line rule for the selection of arbitrators, disqualifying any past employee of the Parties or their affiliates. Mr. Loring's subjective feelings about the Parties are simply irrelevant to whether he satisfies the Agreement's requirements.

ERAC's appointment of Mr. Loring violates the Agreement, and is robbing John Hancock of the right for which it bargained for a prompt resolution of disputes. As a past employee of a Party or its affiliate, Mr. Loring plainly is unqualified to serve as an arbitrator in

this dispute.  John Hancock, therefore, requests that the Court to remove Mr. Loring from the panel, and order ERAC to select an arbitrator who complies with the criteria specified in the Agreement within 14 days of the date of the Court's order.

## III.  <u>Conclusion</u>

For the foregoing reasons, John Hancock respectfully requests that the Court grant the Petition, and award such other relief as the Court deems just and proper.

Respectfully submitted,

By: <u>/s/  Ana M. Francisco</u>
      One of its Attorneys

Ana M. Francisco, BBO# 564346
Foley & Lardner LLP
111 Huntington Avenue
Boston, Massachusetts 02199
Telephone: 617.342.4000

and

Neal Moglin, Esq.
Foley & Lardner LLP
321 North Clark Street
Chicago, Illinois 6065
Telephone: (312) 425-2500

Dated:  October 22, 2015

4816-2054-5321.7

**<u>Certificate of Service</u>**

I, Ana M. Francisco, Esq., hereby certify that, on October 22, 2015, I caused a true and accurate copy of John Hancock's Memorandum in Support of its Petition and Motion for Enforcement of Arbitration Agreement to be delivered by e-mail and first class mail to the following counsel of record for the respondent.

Joseph T. McCullough, IV
Freeborn & Peters LLP
311 S. Wacker Drive, Suite 3000
Chicago, IL 060606

jmccullough@freeborn.com

By: */s/ Ana M. Francisco*
Ana M. Francisco, Esq.

4816-2054-5321.7