UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.)<br>　　　　Plaintiff,<br><br>v.<br><br>EMPLOYERS REASSURANCE CORPORATION,<br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 15-cv-13626 |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                        **June 21, 2016**

## I.     Introduction

Plaintiff John Hancock Life Insurance Company U.S.A. ("John Hancock") brings this "petition and motion for enforcement of arbitration agreement" ("the Petition"). D. 7. Invoking the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 4 and 5, John Hancock asks the Court to remove the arbitrator Employers Reassurance Corporation ("Employers") has appointed to sit on the panel presiding over a pending arbitration between John Hancock and Employers. Id. ¶ 1. John Hancock contends that the arbitrator that Employers appointed does not meet the qualification requirements set out in the parties' arbitration agreement, Agreement No. EP19A01 (the "Agreement"). Id. For the reasons stated below, the Court DENIES the Petition.

## II.    Factual Allegations

The central facts underlying the Petition are undisputed. John Hancock is an insurance company organized under the laws of Michigan with its principal place of business in Boston, Massachusetts. D. 7 ¶ 2. Employers is a reinsurance company organized under the laws of

1

Kansas with its principal place of business in or around Overland Park, Kansas.  Id. ¶ 3.  The Agreement between Employers and John Hancock became effective on July 1, 1999.  D. 7 ¶ 1; D. 18-3 at 4.  Pursuant to the Agreement, John Hancock agreed to cede and Employers to accept a percentage of John Hancock's retention of liability under specified insurance policies issued prior to the effective date of the Agreement.  D. 7 ¶ 7.

The Agreement provides that any dispute that arises relating to the Agreement shall be resolved by arbitration.  D. 3-1 at 12; D. 7 ¶ 1; D. 18 at 1.  The Agreement further provides that each party will appoint one arbitrator and those two arbitrators will then select the third arbitrator.  D. 3-1 at 12; D. 7 ¶ 10; D. 18 at 3.  The second arbitrator must be selected within two weeks after notice is provided that the first arbitrator has been selected.  D. 3-1 at 12; D. 7 ¶ 10.  The two party-appointed arbitrators are instructed to select the third arbitrator within two weeks of appointment of the second arbitrator.  D. 3-1 at 12; D. 7 ¶ 10.  The Agreement specifies that "[a]ll three arbitrators must be officers of Life Insurance Companies or Life Reinsurance Companies, excluding however, officers of the two parties to this Agreement, their affiliates or subsidiaries or past employees of any of these entities."  D. 3-1 at 12; D. 7 ¶ 11; D. 18 at 4.

On August 14, 2015, John Hancock initiated arbitration to resolve a dispute regarding Employers' right to increase the reinsurance premiums charged to John Hancock under the Agreement.  D. 7 ¶ 12; D. 18 at 3.  On August 14, 2015, John Hancock sent Employers a letter naming Thomas M. Zurek as an arbitrator.  D. 3-2; D. 7 ¶ 13; D. 18 at 3.  On August 28, 2015, Employers responded with a letter naming Denis Loring ("Loring") as an arbitrator.  D. 3-4; D. 7 ¶ 14; D. 18 at 3.  On September 4, 2015, John Hancock demanded that Employers withdraw Loring; John Hancock contended that Loring could not serve as an arbitrator because Loring was once employed by one of John Hancock's affiliates, specifically, John Hancock Mutual Life

Insurance Company.  D. 3-6; D. 7 ¶ 15; D. 18 at 3.  Employers refused to withdraw Loring.  D. 7 ¶ 16; D. 18 at 3; D. 18-3 at 7-9.

### III. Procedural History

On October 23, 2015, John Hancock instituted this civil action seeking the removal of Loring.  D. 1.  That same day, John Hancock filed a "petition and motion for enforcement of arbitration agreement."[1]  D. 7.  After a hearing, the Court took the matter under advisement.  D. 21.

### IV. Legal Standard

The FAA "embodies the national policy favoring arbitration," Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006), and "was designed to promote arbitration."  Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (citation and internal quotation mark omitted).  Thus, the FAA "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. § 2).  In further keeping with its goal of promoting arbitration, the FAA provides for judicial enforcement of written arbitration agreements, Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001) (citing 9 U.S.C. § 2), and "expedited judicial review to confirm, vacate, or modify arbitration awards" once the awards have been issued.  Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 578 (2008) (citing 9 U.S.C. §§ 9-11).  With regard to the enforcement of arbitration, "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a district

---

[1] John Hancock previously filed a motion to compel enforcement of arbitration agreement.  D. 1.  John Hancock subsequently withdrew that motion.  D. 6.  In light of John Hancock's withdrawal, the Court denies John Hancock's motion to compel, D. 1, as moot.

court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter, 470 U.S. at 218 (emphasis in original).

## V.     Analysis

### A. The FAA Does Not Authorize the Court to Remove an Arbitrator Before a Final Arbitration Award Has Been Issued

John Hancock's petition requests that the Court (1) remove Loring and (2) order Employers to "name a replacement arbitrator in compliance with the Agreement." D. 7 ¶ 1. John Hancock alleges that the appointment of Loring violates the Agreement's express prohibition on the appointment of past or present employees of John Hancock or of John Hancock's affiliates. D. 7 ¶ 15; D. 9 at 1, 5. According to John Hancock, Loring cannot serve as an arbitrator because he is a former employee of John Hancock Mutual Life Insurance and John Hancock Mutual Life Insurance was an affiliate of John Hancock. D. 7 ¶ 15; D. 9 at 1, 5. In Employers' view, however, Loring's appointment is consistent with the Agreement because Loring ceased working for John Hancock Mutual Life Insurance before John Hancock Mutual Life Insurance became affiliated with John Hancock and John Hancock Mutual Life Insurance is no longer affiliated with John Hancock. D. 18 at 8-9. Thus, the parties appear to disagree as to the specifics of the corporate history between John Hancock and John Hancock Mutual Life Insurance. Compare D. 9 at 8-9 with D. 18 at 9. The parties also disagree as to whether the prohibition in the Agreement extends to individuals who have worked for entities that once were, but no longer are, affiliates of John Hancock. Compare D. 9 at 9 with D. 18 at 9-10.

John Hancock describes its petition to remove Loring as arising under section 4 of the FAA and asserts that the Court's authority to remove Loring prior to the conclusion of the arbitration arises under section 5 of the FAA. D. 9 at 6. Section 4 of the FAA allows "part[ies]

4

aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to seek an order from a district court compelling that "arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  Section 5 indicates that if the arbitration agreement provides a method for appointing arbitrators, that method "shall be followed."  9 U.S.C. § 5. Section 5 also grants courts the authority to appoint an arbitrator in certain specified circumstances:  where the arbitration agreement does not provide a method for appointing arbitrators, where a party fails to "avail himself of such method" or "if for any other reason there shall be a lapse in the naming of an arbitrator."  Id.  John Hancock's petition, however, does not seek to compel arbitration, as there is no contention that Employers is refusing to arbitrate the underlying dispute.  D. 7 ¶ 14.  John Hancock's petition also does not invoke the Court's power under the FAA to appoint an arbitrator.  Instead, John Hancock specifically requests that the Court remove the arbitrator that Employers timely appointed.  D. 7 ¶ 1.  Court-removal of a party-appointed arbitrator and court-appointment of an arbitrator are distinct actions.  See Nat'l Cas. Co. v. OneBeacon Am. Ins. Co., No. 12-cv-11874-DJC, 2013 WL 3335022, at *10 (D. Mass. July 1, 2013) (citing Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co., 304 F.3d 476, 489-90 (5th Cir. 2002)) (recognizing the distinction between appointing and removing an arbitrator), aff'd sub nom. Emp'rs Ins. Co. of Wausau v. OneBeacon Am. Ins. Co., 744 F.3d 25 (1st Cir. 2014).  Thus, the Court will consider John Hancock's request in the terms it has been presented – as a removal of an arbitrator.

John Hancock's request for removal is premised upon John Hancock's contention that the FAA grants courts a limited authority to remove party-appointed arbitrators prior to the issuance of the arbitration award.  D. 9 at 6.  John Hancock acknowledges that there is a general rule barring judicial removal of party-appointed arbitrators prior to the conclusion of the arbitration.

Id. John Hancock argues, however, that the prohibition on judicial intervention is limited to pre-award challenges regarding the bias of arbitrators. Id. In John Hancock's view, there is an exception permitting pre-award judicial removal of an arbitrator where removal is based upon "[the] arbitrator's failure to meet the criteria specified in the arbitration agreement." Id. Accordingly, in assessing John Hancock's argument, the Court will first review the general prohibition on pre-award removal of a party-appointed arbitrator and then consider the exception that John Hancock suggests exists.

The FAA contains no provision expressly granting courts the authority to remove a party-appointed arbitrator prior to the conclusion of the arbitration. 9 U.S.C. §§ 1-16. Notably, neither section 4 nor section 5 of the FAA, which John Hancock invokes, contains any express language regarding removal. 9 U.S.C. §§ 4, 5. The FAA lays out specific avenues through which district courts may review arbitration proceedings, including naming remedies for concerns regarding party-appointed arbitrators; pre-award removal is not a listed remedy. Instead, pursuant to section 10, any party to an arbitration may petition a district court to vacate an arbitration award based upon several enumerated grounds, including if "the award was procured by . . . undue means," if there was "evident partiality or corruption in the arbitrators," if there was arbitrator "misbehavior" and if "the arbitrators exceeded their powers, or so imperfectly executed them." 9 U.S.C. § 10. Similarly, pursuant to section 11, any party to an arbitration may petition a district court to modify an arbitration award. 9 U.S.C. § 11. In either circumstance, "[i]t is essential for the district court's jurisdiction that the arbitrator's decision was final." El Mundo Broad. Corp. v. United Steelworkers of Am., AFL-CIO CLC, 116 F.3d 7, 9 (1st Cir. 1997) (citations omitted).

Thus, based upon the express terms of the FAA, challenges to a party-appointed arbitrator, such as allegations of bias, are properly considered by courts only at the conclusion of

the arbitration. See, e.g., Allstate Ins. Co. v. OneBeacon Am. Ins. Co., 989 F. Supp. 2d 143, 147 (D. Mass. 2013) (citation omitted) (stating that "[t]he time to challenge an arbitration, on whatever grounds, including bias, is when the arbitration is completed and an award rendered"); Smith v. Am. Arbitration Ass'n, Inc., 233 F.3d 502, 506 (7th Cir. 2000) (citations omitted) (stating the same); Florasynth, Inc. v. Pickholz, 750 F.2d 171, 174 (2d Cir. 1984) (noting that "[t]he Arbitration Act does not provide for judicial scrutiny of an arbitrator's qualifications to serve, other than in a proceeding to confirm or vacate an award, which necessarily occurs after the arbitrator has rendered his service"); Certain Underwriters at Lloyd's London v. Argonaut Ins. Co., 264 F. Supp. 2d 926, 937 (N.D. Cal. 2003) (recognizing that "other courts have consistently held that courts do not have the power under the FAA to disqualify an arbitrator while proceedings are pending"). Courts have granted relief through post-award motions for vacatur or modification. See, e.g., Avis Rent A Car Sys., Inc. v. Garage Emps. Union, Local 272, 791 F.2d 22, 25 (2d Cir. 1986) (citations omitted) (noting that "[c]ourts generally enforce . . . clauses [relating to arbitrator selection process] strictly, vacating awards entered by arbitrators whose qualifications or method of appointment fail to conform to arbitration clauses"); Serv. Emps. Int'l Union, Local 32BJ v. Coby Grand Concourse, LLC, No. 04-cv-9580-CSH, 2006 WL 692000, at *5 (S.D.N.Y. Mar. 16, 2006) (citing 9 U.S.C. § 10(a)(4)) (concluding that "[s]ince the unilaterally selected arbitrator in this case was chosen in complete contravention of the arbitration provision of the [agreement], the arbitrator's award was without effect, and is therefore vacated").

     John Hancock's argument that there is an exception to this body of case law, an exception that permits pre-award removal where the challenge is based upon contract-based qualifications, has been considered and rejected by the Fifth Circuit. See Gulf Guar. Life Ins. Co., 304 F.3d at

490-91. In Gulf Guaranty Life Insurance Co., the Fifth Circuit relied upon the language of the FAA to conclude that courts do not have authority to remove arbitrators pre-award even if the challenge arises from an express term in the arbitration agreement. Id. In Gulf Guaranty Life Insurance Co., two insurance companies entered into a reinsurance contract that contained an arbitration clause. Id. at 479-80. When a dispute arose, pursuant to the arbitration agreement, each of the companies selected an arbitrator. Id. at 480. Before the arbitration concluded, the moving party asked a district court to strike the non-moving party's designated arbitrator on the grounds that the arbitrator did not satisfy the requirements listed in the arbitration agreement. Id. at 481. The district court granted the motion, reasoning that the challenged arbitrator's status as an executive of a reinsurance company did not satisfy the arbitration agreement's express requirement that the arbitrators had to be executives of life insurance companies. Id. at 489. On appeal, the Fifth Circuit reversed. Id. at 491. The Fifth Circuit explained that "[u]nder the FAA, jurisdiction by the courts to intervene into the arbitral process prior to issuance of an award is very limited." Id. at 486 (citing Larry's United Super, Inc. v. Werries, 253 F.3d 1083, 1085 (8th Cir. 2001)). Recognizing, first, that "there is no authorization under the FAA's express terms for a court to remove an arbitrator from service" and, second, that the FAA invites pre-award judicial intervention only where challenges "raise[] concerns rising to the level that the very validity of the agreement be at issue,"  the court concluded that "a court may not entertain disputes over the qualifications of an arbitrator to serve merely because a party claims that enforcement of the contract by its terms is at issue." Id. at 490-91 (footnote omitted). The mere reliance upon a term of the arbitration agreement, without more, does not grant the court jurisdiction to interrupt an arbitration to which the parties have properly agreed.

In deciding Gulf Guaranty Life Insurance Co., the Fifth Circuit relied upon a Second Circuit decision, Aviall, Inc. v. Ryder Sys., Inc., 110 F.3d 892 (2d Cir. 1997), that also rejected a request for pre-award removal of a party-appointed arbitrator even though the challenge to the arbitrator invoked a contractual provision.  In Aviall, Inc., the moving party argued that the court had to remove the appointed arbitrator because the arbitrator was no longer serving as the "independent" auditor for both of the parties, as was required by the terms of the arbitration agreement.  Id. at 893-95.  Instead, the arbitrator served as "regular outside auditor" for the non-moving party, which, in the moving party's view, rendered the arbitrator "disqualifie[d]."  Id. at 895.  In response, the Second Circuit turned to the language of the FAA and determined that "[a]lthough the FAA provides that a court can vacate an award '[w]here there was evident partiality or corruption in the arbitrators,' . . . it does not provide for pre-award removal of an arbitrator."  Id. (quoting 9 U.S.C. § 10(a)(2)).  The court described the rule that "a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award" as "well established."  Aviall, Inc., 110 F.3d at 895 (quoting Michaels v. Mariforum Shipping, S.A., 624 F.2d 411, 414 n.4 (2d Cir.1980)) (internal quotation marks omitted).

This Court agrees with the reasoning of the Fifth Circuit, Second Circuit and multiple district courts that have rejected the argument that courts have jurisdiction to remove an arbitrator pre-award simply because the challenge to the arbitrator invokes a qualification set out in the arbitration agreement.  See, e.g., Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co., No. 09-cv-6169-HDL, 2010 WL 431592, at *2-3 (N.D. Ill. Feb. 1, 2010) (citations omitted) (concluding that the FAA does not provide courts the power to remove an arbitrator and noting that a "[p]laintiff cannot avoid this outcome by merely restating the qualification challenge as a breach

9

of contract claim"); Ins. Co. of N. Am. v. Pennant Ins. Co., No. 97-cv-154-FSVA, 1998 WL 103305, at *3 (E.D. Pa. Feb. 18, 1998) (relying upon Aviall, Inc. in declining to review an arbitrator's qualifications before the arbitration was concluded); Marc Rich & Co., A. G. v. Transmarine Seaways Corp. of Monrovia, 443 F. Supp. 386, 388 (S.D.N.Y. 1978) (citation omitted) (rejecting request for pre-award judicial intervention because "the question of qualification, where initially committed to the arbitrators themselves, is subject to judicial review only after an award has been made").

John Hancock interprets the FAA to allow for pre-award removal where the challenge to the arbitrator is based upon qualifications. D. 20 at 5. John Hancock takes the position that a request for pre-award removal based upon arbitrator qualifications is distinct from a court impermissibly intervening to remove a biased arbitrator because the qualifications-based request turns upon the express requirements of the Agreement. Id. This distinction, however, is not supported by the language of the FAA. As emphasized by the Fifth Circuit in Gulf Guaranty Life Insurance Co., the FAA does not contain language authorizing "court inquiry into the capacity of any arbitrator to serve prior to issuance of an arbitral award." Gulf Guar. Life Ins. Co., 304 F.3d at 490. The FAA provides no express authorization for pre-award judicial intervention regardless of the grounds for removal; whether an arbitrator satisfies a provision of the arbitration agreement is a question of the arbitrator's capacity to serve just as much as a challenge regarding the arbitrator's bias is a question of capacity to serve. John Hancock's attempt to rely upon section 5 of the FAA to salvage its argument, D. 20 at 4, is unavailing. Even if John Hancock is correct that "this Court has statutory authority to enter an order compelling [Employers] to follow the method of naming or appointing an arbitrator or arbitrators set out in the Agreement," id. (citation and internal quotation marks omitted), any order issued

pursuant to section 5 could only instruct that the method for appointing an arbitrator that is reflected in the Agreement is followed; section 5 does not provide authority for judicial inquiry into a particular arbitrator's qualifications. Thus, John Hancock's request for pre-award removal based upon Loring's alleged lack of qualifications – particularly given that it is undisputed that the Agreement granted Employers the right to appoint one arbitrator, Employers appointed Loring in a timely fashion and Employers properly notified John Hancock of its appointment, D. 7 ¶¶ 10-16 – is not authorized by section 5.

In the absence of statutory language supporting the alleged distinction between bias-based challenges and qualifications-based challenges, John Hancock relies upon policy, arguing that "addressing the threshold issue of []Loring's eligibility at this juncture promotes the goals of speed and efficiency that arbitration and the FAA are supposed to foster." D. 20 at 5. The policy aims of the FAA, however, neither support pre-award judicial interference into arbitrator appointments as a general matter nor support creating a separate rule based upon the nature of the challenge to the arbitrator. In interpreting the FAA, courts can draw critical guidance from the fact that "Congress's clear intent [with the FAA was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983). Arbitration is first and foremost "'a matter of contract,'" Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 376 (1st Cir. 2011) (citing Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010)), and "'strictly a matter of consent.'" Id. (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010)). As the Seventh Circuit has articulated, "[t]he choice of arbitration is a choice to trade off certain procedural safeguards, such as appellate review, against hoped-for savings in time and

11

expense (other than the expense of the tribunal), a measure of procedural simplicity and informality, and a differently constituted tribunal." Smith, 233 F.3d at 506 (citations omitted).

John Hancock's decision to resolve its disputes with Employers through arbitration "would be disrupted by allowing [either] party to arbitration to obtain an interlocutory appeal to a federal district court." Id. If the Court removed Loring now, "there would be no assurance that [John Hancock] would be satisfied with [Loring's] successor and would not bring yet another proceeding to disqualify him or her." Gulf Guar. Life Ins. Co., 304 F.3d at 492 (quoting Marc Rich & Co., A. G., 443 F. Supp. at 387-88) (internal quotation marks omitted). In this way, the rule John Hancock proposes could "spawn endless applications [to the courts] and indefinite delay." Id. (alteration in original) (quoting Marc Rich & Co., A. G., 443 F. Supp. at 387-88) (internal quotation marks omitted). That outcome would be inconsistent with a "prime objective of arbitration law," which is "permit[ting] a just and expeditious result with a minimum of judicial interference." Id. (citation and internal quotation marks omitted). In sum, the policy objectives of the FAA call for a close reading of the language of the FAA and the authority therein granted to courts. Moreover, contrary to John Hancock's suggestions, D. 20 at 5, the determination of which categories of challenges may be reviewed by a court pre-award does not turn upon the "difficulty" of resolving the challenge, but rather on whether the FAA grants courts the authority to review the challenge and whether that review is consistent with the policies animating the FAA. Here, neither statutory language nor policy supports pre-award judicial intervention.

### B. Case Law Also Does Not Support John Hancock's Position

Importantly, neither the parties nor the Court have found a single Massachusetts federal decision removing an arbitrator before the conclusion of the arbitration for failure to satisfy contractual requirements. The two Massachusetts cases upon which John Hancock relies,

Allstate Insurance Co., 989 F. Supp. 2d 143, and National Casualty Co., 2013 WL 3335022, do not "adopt" an exception to the well-settled rule against pre-award judicial review of arbitrators, as John Hancock suggests. D. 9 at 6-7. In the process of declining to remove an arbitrator pre-award, the Allstate Ins. Co. and National Casualty Co. courts merely acknowledged, without endorsing, the existence of two out-of-district cases that allowed for pre-award judicial removal of an arbitrator.

In Allstate Insurance Co., the moving party argued that the nonmoving party's inadvertent disclosure to the arbitrator of the identity of the party that had appointed the arbitrator violated the arbitration agreement's provision for "disinterested umpire[s]." Allstate Ins. Co., 989 F. Supp. 2d at 148 (internal quotation marks omitted). Even though a contractual provision had been invoked, the court dismissed the challenge as "a dressed-up bias claim against an allegedly impartial arbitrator." Id. at 149. In reaching its conclusion, the court merely acknowledged the existence of a single out of circuit decision that granted pre-award removal of an arbitrator. Id. at 147 (citing Jefferson-Pilot Life Ins. Co. v. LeafRe Reinsurance Co., No. 00-cv-5257-JBZ, 2000 WL 1724661, at *2 (N.D. Ill. Nov. 20, 2000)). The court neither endorsed nor applied any exception to the bar on pre-award intervention.

In National Casualty Co., this Court rejected a request for pre-award removal of an arbitrator based upon the alleged lack of impartiality. See Nat'l Cas. Co., 2013 WL 3335022, at *4, *13. This Court recognized "courts' reluctance to remove an arbitrator prior to an arbitral award" and described the intervention that was being sought as "premature." Id. at *12. This Court distinguished two decisions – B/E Aerospace, Inc. v. Jet Aviation St. Louis, Inc., No. 11-cv-4032-BSJ, 2011 WL 2852857, at *1-2 (S.D.N.Y. July 1, 2011) and Jefferson-Pilot Life Ins. Co., 2000 WL 1724661, *1-2 – in which courts had removed arbitrators prior to the arbitration

13

award. See Nat'l Cas. Co., 2013 WL 3335022, at *12. Because B/E Aerospace, Inc. and Jefferson-Pilot Life Ins. Co. addressed challenges regarding whether the appointment of a particular arbitrator satisfied contractual requirements, this Court determined that the cases did not apply to the question of pre-award removal of an arbitrator based upon bias (with no contract language invoked). Id. This Court did not endorse the reasoning of B/E Aerospace, Inc. or Jefferson-Pilot Life Ins. Co.. To the contrary, in National Casualty Co., this Court relied extensively and approvingly upon the reasoning of Gulf Guaranty Life Insurance Co., which, as discussed, flatly rejected the precise type of pre-arbitration award relief that John Hancock seeks. See Nat'l Cas. Co., 2013 WL 3335022, at *11 (citing Gulf Guar. Life Ins. Co., 304 F.3d at 492).

Finally, the Court finds the four out of circuit opinions that John Hancock relies upon to be unpersuasive here. See Jefferson-Pilot Life Ins. Co., 2000 WL 1724661; B/E Aerospace, Inc., 2011 WL 2852857; Farrell v. Subway Int'l, B.V., No. 11-cv-08-JFK, 2011 WL 1085017, at *5 (S.D.N.Y. Mar. 23, 2011); Oakland-Macomb Interceptor Drain Drainage Dist. v. Ric-Man Const., Inc., 304 Mich. App. 46, 57 (2014). First, Farrell is inapposite because it addresses a challenge concerning what set of rules should govern an arbitration, rather than a qualifications-based challenge to an individual arbitrator. See Farrell, 2011 WL 1085017, at *4. Second, the remaining three cases do not reflect the close reading of the FAA that is consistent with the policy aims of the FAA. None of these cases points to express language in the FAA authorizing pre-award removal of arbitrators based upon qualifications. Instead, the courts rely upon section 5 and, in so doing, read into section 5 authority that is not provided by the language of that section. See Jefferson-Pilot Life Ins. Co., 2000 WL 1724661, at *2 (citing 9 U.S.C. § 5); B/E Aerospace, Inc., 2011 WL 2852857, at *1 (citing 9 U.S.C. § 5); Oakland-Macomb, 304 Mich. App. at 57 (citing 9 U.S.C. §§ 4, 5). As discussed, section 5 instructs that courts have

jurisdiction pre-award to require parties to follow the "method" provided for in the arbitration agreement. 9 U.S.C. § 5. Where the method – that is the process – for selecting the arbitrator that is contained in the arbitration agreement has been honored, the authority granted by section 5 ends.

Moreover, the courts in B/E Aerospace, Inc. and Jefferson-Pilot Life Ins. Co. concede that there exists a general prohibition on pre-award removal of an arbitrator. See B/E Aerospace, Inc., 2011 WL 2852857, at *1 (noting that "[t]he Court is mindful that the Second Circuit has interpreted the FAA to preclude pre-award removal of arbitrators in most cases"); Jefferson-Pilot Life Ins. Co., 2000 WL 1724661, at *2 (acknowledging that "[t]here is little disagreement among courts that (except in exceptional circumstances) allegations of an arbitrator's bias or impartiality cannot be litigated at the pre-award stage"). In Oakland-Macomb, the court cabined its decision to circumstances where "the arbitration agreement explicitly specifies detailed qualifications the arbitrator must possess." Oakland-Macomb, 304 Mich. App. at 57-58. I

In the end, because John Hancock has not alleged that its concerns regarding Employers' appointment of Loring raise questions about "the very validity" of the Agreement, Gulf Guar. Life Ins. Co., 304 F.3d at 491, John Hancock's attempt to cast its request for pre-award judicial intervention as a matter of contract enforcement is unconvincing. The Court does not have the authority pursuant to the FAA to remove Loring as an arbitrator prior to the conclusion of the arbitration. As it is undisputed that there is a valid arbitration agreement that applies to this dispute, the Court directs the parties to arbitration.

**VI. Conclusion**

For all of these reasons, the Court DENIES John Hancock's petition. D. 7.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge